IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SERGUEI GOLOVAN, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 13-862-RGA |
| : | |
| UNIVERSITY OF DELAWARE, : | |
| et al., : | |
| : | |
| Defendants. : | |

**MEMORANDUM ORDER**

An assistant professor claims that his termination from employment at the University of Delaware violates due process. He seeks a preliminary injunction. For the reasons that follow, I **DENY** the motion for a preliminary injunction. (D.I. 1).

I consider the motion in light of the standard for granting a preliminary injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

It seems unlikely Plaintiff will succeed on the merits. He argues that his six year tenure-track process involved a two-year contract followed by a four-year contract. He claims he could not be terminated after the fourth year, that is, in the middle of the second contract. The University says the process involved three two-year contracts, and that he was reviewed and terminated after the middle two-year contract. The University has the better of that argument, as the University's Handbook clearly envisions three two-year contracts. (D.I. 3-1, at 20, 23 ["three

successive two-year contracts"]). Plaintiff also argues that because the University gave him a one-year terminal contract after firing him, that the University did not follow its own procedures, which did not require the University to offer him such a contract. I doubt that a fact-finder is going to find that the University had no choice but to terminate him immediately once the University decided to terminate him. Plaintiff also argues that he did not get a full appeal because Dean Rieger refused to consider evidence that was subsequent to the termination. (D.I. 3-1 at 48). I am not convinced that due process required that the University, having decided to terminate Plaintiff, had to consider evidence of Plaintiff's accomplishments after that decision. Instead, as is apparent, Dean Rieger saw the appeal as an opportunity to review that all appropriate process had gone into the decision under review.

Plaintiff has not shown a likelihood of irreparable harm. Generally, in employment cases, damages are sufficient to address any harm. Plaintiff submitted numerous letters showing that he has applied for many (77) teaching jobs, and states that he has gotten no response because of the stigma surrounding his leaving the University. The applications are undated. (D.I. 3-1 at 53-129). He says that he made these applications shortly after learning he was being terminated (presumably either June 18, 2012, *see* D.I. 3-1 at 40, or September 7, 2012, *see* D.I. 3-1 at 48), that is, about a year ago. (D.I. 3-1 at 157, ¶ 66). As of August 31, 2013, his University of Delaware website faculty profile looked like that of any other faculty member. Thus, whatever the reason for the lack of interest in Plaintiff, it seems unlikely it can be attributed to his termination from the University. Since it is apparent that the main reason for his termination was that he was not showing any evidence of becoming self-supporting,[1] there is no reason that his

---

[1] It appears that he got $55,000 in outside funding during the four years, [D.I. 3-1 at 37-38], and while I cannot tell what the University expected, one professor, his lab, and graduate students require a lot more funding than that.

success or lack of success in obtaining other employment should be interpreted as being for a "stigmatizing" reason such as "gross misconduct."

Plaintiff has not shown the balance of equities tips in his favor. Indeed, he scarcely addresses this point.

Plaintiff has not shown that an injunction is in the public interest. Plaintiff's argument on this point is mainly that, the University has violated his rights, and therefore he should be kept in place while the legal process unfolds. (D.I. 2, at 24). The University responds that it is not in the public interest to keep a terminated employee in place. To the extent the public interest factor is a reflection of the "likelihood of success on the merits" factor, it favors the University.

9-3-13
Date

_____
United States District Judge