## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **SERGUEI GOLOVAN**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**UNIVERSITY OF DELAWARE**<br><br>**JACK GELB, JR.**<br>**In his individual and official capacities,**<br><br>**MARK RIEGER**<br>**In his individual and official capacities,**<br><br>**ROBIN MORGAN**<br>**In his individual and official capacities,**<br><br>**Defendants.** | **Civil Action No. 13-cv-862-RGA**<br><br>**PROPOSED AMENDED COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

## <u>INTRODUCTION</u>

1.     This action for a preliminary injunction, as well as for declaratory and other appropriate relief, is brought by Plaintiff to redress the violations by the Defendants of the rights secured to Plaintiff by the laws of the United States of America and the statutory and common law of the State of Delaware.

2.     At all times material since September 1, 2008, Plaintiff has been a tenure-track Assistant Professor for the University of Delaware in the Department of Animal and Food Sciences in the College of Agriculture and Natural Resources. Under the terms of his employment contract, Plaintiff was to apply for reappointment after his second year. Further, Plaintiff's tenure application is to be considered by the University no later than at the end of Plaintiff's sixth year of employment, the 2013-2014 academic year. In 2010, Plaintiff was granted reappointment. As such, pursuant to the contract, Plaintiff could apply for tenure at any point up to the end of his

sixth year. However, at the end of his fourth year, the University unilaterally determined that Plaintiff would not be "re-appointed" for his fifth (2012-2013) and sixth (2013-2014) years, contrary to the employment contract with the Plaintiff. Thereafter, the University provided Plaintiff with employment for his fifth year, but did not provide him with employment for his sixth year or an opportunity to apply for tenure. This conduct violated the employment contract. The University also did not permit Plaintiff to fully appeal this decision.

3.     Defendant's conduct violates Plaintiff's 14th Amendment Due Process rights, and also constitutes a breach of the employment contract between Plaintiff and Defendant. Further, by refusing to allow Plaintiff to apply for tenure or even to continue on a non-tenured basis for his sixth year, the University is causing irreparable harm due to being terminated before applying for tenure. Because of Plaintiff's termination effective after only five years, there is a perception in the academic community that Plaintiff was not able to apply for tenure due to being terminated for cause, as opposed to being let go at the end of his contract. Plaintiff has been unable to obtain employment for the 2013-2014 academic year, despite his excellent academic credentials. Since learning that his employment would end at the end of the 2012-2013 academic year, Plaintiff has applied to *seventy-seven* (77) universities, all without success, due to the stigma caused by being terminated before he could even apply for tenure.

4.     Accordingly, Plaintiff brings this motion for a preliminary injunction to enjoin Defendant from proceeding with the termination of Plaintiff effective at the end of the 2012-2013 academic year and to be permitted to apply for tenure. Specifically, Plaintiff's employment is scheduled to end effective August 31, 2013. Should this termination continue to proceed as scheduled, Plaintiff's aforestated constitutional and contractual rights will be violated. As a result, Plaintiff will subsequently suffer irreparable harm, in that he will be unable to find subsequent

employment, his reputation will be ruined, and he will lose health insurance. Accordingly, the instant motion must be granted, for the reasons set forth at length below.

## JURISDICTION

5.      Plaintiff incorporates the above paragraphs by reference.

6.      This action is brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory and constitutional provisions.

7.      Jurisdiction lies over the state law claims based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

8.      The amount in controversy, exclusive of interest and costs, exceeds the sum of one hundred thousand dollars ($100,000.00).

## VENUE

9.      Plaintiff incorporates the above paragraphs by reference.

10.     All the claims herein arose within the jurisdiction of the United States District Court for the District of Delaware and involve Defendants who reside within the jurisdictional limits. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391 (b) and (c).

## PARTIES

11.     Plaintiff incorporates the above paragraphs by reference.

12.     Plaintiff Serguei Golovan is an individual citizen residing at 922 Quail Lane, Newark, Delaware, 19711. At all times material since September 1, 2008, Plaintiff has been an employee of and tenure-track Assistant Professor for the University of Delaware, main campus.

13.     Defendant University of Delaware is a university, receiving state and federal assistance, with its main campus and administration located at 150 S. College Ave  Newark, DE 19716.

14. Defendant Jack Gelb is an employee of the University of Delaware, located at 150 S. College Ave Newark, DE 19716. At all times material, Jack Gelb has been the Department Chair of the Department of Animal and Food Sciences within the College of Agriculture and Nature Resources in the University of Delaware.

15. Defendant Mark Rieger is an employee of the University of Delaware, located at 150 S. College Ave Newark, DE 19716. At all times material since approximately September of 2012, Mark Rieger has been the Dean of the College of Agriculture and Nature Resources in the University of Delaware.

16. Defendant Robin Morgan is an employee of the University of Delaware, located at 150 S. College Ave Newark, DE 19716. At all times material until approximately September of 2012, Robin Morgan was the Dean of the College of Agriculture and Nature Resources in the University of Delaware.

## FACTS

17. Plaintiff incorporates the above paragraphs by reference.

18. At all times material since September 1, 2008, Plaintiff has been an Assistant Professor for the University of Delaware in the Department of Animal and Food Sciences in the College of Agriculture and Natural Resources.

19. Plaintiff received his PhD From the Department of Molecular and Cellular Biology at the University of Guelph, Canada.

20. In 2002, Plaintiff was a Postdoctoral Fellow in Microbiology at the University of Guelph.

21. From 2003-2008, Plaintiff was Assistant Professor (non-tenure track) in the Department of Animal and Poultry Science, University of Guelph.

22.     Thereafter, on July 11, 2008, Plaintiff obtained a retention letter from the University offering Plaintiff employment as a tenure-track Assistant Professor at the University of Delaware.

23.     Pursuant to Plaintiff's employment retention letter from the University of Delaware ("the University"), Plaintiff was appointed on a "tenure track", effective September 1, 2008.

24.     Plaintiff's employment prior to tenure was essentially split into two (2) periods, the first being an initial two-year period, and then, if Plaintiff was re-appointed at the end of this period, then a four-year period would follow, thus bringing Plaintiff to the end of his sixth year.

25.     The pertinent section of the retention letter states the following:

> "This faculty appointment is full-time and for an initial period of two years. The probationary period for assistant professors shall normally be no longer than six years from the date of first appointment as assistant professor at the University of Delaware. In your case, you would normally be eligible to be considered for tenure not later than the 2013-2014 academic year (your sixth year of academic service) with tenure effective, if the decision is favorable, starting with the fall semester of the 2014-2015 academic year."

26.     Per the contract, at the end of Plaintiff's first two-year term, he was reappointed and continued on his tenure track.

27.     On February 8, 2010, the Department of Animal & Food Sciences Committee on Promotion and Tenure ("Committee") voted 4-1 to reappoint Plaintiff to his tenure-track position.

28.     In a March 2, 2010 letter to Plaintiff from Dr. Jack Gelb, Jr., the Department Chair, Dr. Gelb concurred with the Committee's decision to reappoint Plaintiff.

29.     Dr. Gelb also commended Plaintiff's teaching, academic advisement, and service to the University.

30. Dr. Gelb felt that "teaching and advisement are highly important and valued by the Department and the University, and these efforts will be closely scrutinized during Promotion and Tenure deliberations."

31. Finally, Dr. Gelb stated that he looked forward to assisting Plaintiff as Plaintiff progressed towards his "fourth year peer evaluation and eventual Promotion and Tenure process." (emphasis added).

32. At this point, pursuant to the contract, Plaintiff did not need to be "re-appointed" to continue through his sixth year and to apply for tenure.

33. In approximately September of 2010, Plaintiff discovered that Dr. Lawrence Cogburn, a tenured professor at University of Delaware, was engaging in an extra-marital affair with a graduate student at University of Delaware.

34. In approximately May of 2011, Plaintiff discovered that this was not the first time that Dr. Cogburn had engaged in sexual relationships with his graduate and/or undergraduate students.

35. Plaintiff also discovered that various students believed that Dr. Cogburn had made sexually inappropriate comments about female students in class.

36. Plaintiff reasonably believed that Dr. Cogburn was violating the University anti-discrimination/harassment policy.

37. Pursuant to said policy, Plaintiff, as someone who had reason to believe that the policy was being violated, was required to report said violations.

38. As such, in approximately late May of 2011, Plaintiff reported this conduct to Defendant Dean Morgan and Dr. Keeler. The next day, Plaintiff reported this conduct to Department Chair Dr. Gelb.

39. In response, Plaintiff was told that he should not discuss this issue with anyone else, and that the issue would be handled by the University.

40. After Plaintiff made the claims regarding Dr. Cogburn, the University, agents of the University, and the individual Defendants began to retaliate against Plaintiff, as set forth in the following paragraphs:

41. Dr. Gelb refused to disburse funding to Plaintiff in 2011, after Plaintiff was awarded said funding as part of a grant from Avian Biosciences Center. Plaintiff never received the funding from Dr. Gelb, and, after repeated requests to Dr. Gelb in 2011-2012, Plaintiff was told by Dr. Gelb that all grant monies had been spent.

42. In August of 2011, Plaintiff applied for a provisional patent. However, both Dr. Gelb and Dean Morgan refused to support the patent application, even though there was strong support from the University patent committee. The University paid the cost of the patent application, which is approximately $3,000, but refused to provide any additional funding. On the other hand, the University had previously paid approximately $100,000 to support an unsuccessful patent application by Dr. Cogburn.

43. Previous to Plaintiff's complaints, Dr. Gelb previously supported Plaintiff's application for permanent residency in the United States in 2010. However, in 2011, after making his complaints regarding Dr. Cogburn, Plaintiff again asked Dr. Gelb for Letter of Support from the Department for said application. This time, Dr. Gelb refused to provide the letter of support, thus forcing Plaintiff to change his application for Permanent Residency application from a "First Preference Immigration Petition" (Alien of Extraordinary Ability EB-1, which required the sponsorship and support of the applicant's employer), to a National Interest Waiver, which was self-sponsored.

44.     At the end of 2011, the University refused to extend the contract of a Post-doctoral Fellow who was essential in assisting Plaintiff's research and patent applications, even after Plaintiff had sufficient funding to continue this contract and even after Plaintiff specifically requested that he be permitted to renew the post-doctoral fellow's contract.

45.     In 2012, Plaintiff received a poor annual evaluation from Dr. Gelb, even though Plaintiff had a peer-reviewed paper published, filed a provisional patent, and received a grant from received U.S. Poultry during the relevant time period.

46.     Plaintiff also learned that the University had been using monies from Plaintiff's U.S. Poultry grant to pay for non-related lab expenses. Despite this, the Department, chaired by Dr. Gelb, stopped providing Plaintiff with money for lab expenses in February of 2013 and recently moved Plaintiff's graduate students to another supervisor, thus interfering with Plaintiff's ability to conduct research.

47.     Further, in retaliation for Plaintiff speaking out about Dr. Cogburn's conduct, on or about May 18, 2012, prior to any tenure application by Plaintiff, the Committee decided to not allow Plaintiff to fulfill the terms of his contract, even though the employment contract did not permit the University to take such action.

48.     This was only after Plaintiff's fourth year at the University.

49.     At the time, the chair of the Committee was Dr. Keeler, to whom Plaintiff had previously made complaints regarding the conduct of Dr. Cogburn. Further, Dr. Cogburn was also a member of the Committee at this time.

50.     As noted above, the retention letter, which serves as the employment contract, only requires Plaintiff to be re-appointed after the first two years.

51.    After that, the contract does not provide for another re-appointment in order for Plaintiff to continue through his sixth year.

52.    Additionally, as will be set forth below, the University continued Plaintiff's employment for Plaintiff's fifth year, but not his sixth year.

53.    Moreover, the University essentially denied Plaintiff's tenure application prior to him actually making such an application.

54.    On May 25, 2012, Dr. Gelb, the Department Chair, concurred with the Committee's determination that Plaintiff should not reappointed.

55.    As such, on June 18, 2012, Robin Morgan, who was the University Dean of the College of Agriculture and Natural Resources, formally notified Plaintiff that he was "not making adequate progress", and therefore that Plaintiff would be unable to "meet the standard required for promotion and tenure."

56.    As such, Dean Morgan notified Plaintiff that his contract would expire on August 31, 2013, which would constitute the end of Plaintiff's fifth year.

57.    The University's purported justification for requiring this re-appointment was that such re-appointment is set forth in the University faculty handbook.

58.    The faculty handbook is not consistent with Plaintiff's retention letter, and even the handbook does not permit Plaintiff to be terminated at the end of the 2012-2013 academic year, Plaintiff's fifth year with the University.

59.    The section of the University of Delaware Faculty handbook pertaining to tenure, section 4.4.12, also sets forth terms for an Assistant Professor's tenure.

60.    This handbook states the following, in pertinent part:

    "Tenure-track assistant professors are appointed to full-time faculty positions for
    an initial term of two years without tenure. Reappointment at this rank are for a

two-year term. The probationary period for assistant professors is six years, divided into three successive two-year contracts. The start of the probationary period coincides with the effective date of the initial appointment as assistant professor. This date governs the timetables for peer review for contract renewal and for review for promotion and tenure. Assistant professors are expected to be considered for promotion and tenure not later than the sixth year of full-time academic service, with tenure effective – if the decision is favorable – starting with the fall semester of the seventh academic year. If the decision on promotion and tenure is negative, the seventh year of academic year will be a terminal year.

61.     As is evident, the handbook contains numerous provisions in addition to and in conflict with the terms of the actual employment contract.

62.     As noted above, the employment contract does not provide a "re-appointment" term of two-years, but the handbook does.

63.     However, even if the handbook applies, the University still did not take proper action pursuant to the terms of said handbook.

64.     Under the handbook, if Plaintiff was re-appointed at the end of his fourth year (2011-2012), then this re-appointment would last for two years, his fifth (2012-2013) and sixth (2013-2014) years.

65.     This reappointment was to last for *two* years, not one, and thus Plaintiff was required to maintain his employment not only for this current academic year, but the next year as well.

66.     However, Plaintiff was only permitted to remain on the faculty for his fifth year.

67.     Moreover, while Defendants provided Plaintiff with his fifth year as a "terminal year", the handbook only permits a terminal year if tenure is denied, not if "re-appointment" is denied.

68.     As such, the University did not have the power to offer Plaintiff a "terminal year" for his fifth year, and was instead required to allow Plaintiff to continue to his sixth year by virtue of his reappointment after his fourth year.

69.    However, the University cannot limit Plaintiff's term to only one year, and Plaintiff must be permitted to complete his sixth year, which is the 2013-2014 year.

70.    Further, if Plaintiff is to be permitted to complete his sixth year, then he should be permitted to apply for tenure, pursuant to the contract.

71.    Additionally, it is important to note that the handbook provides additional rights to Plaintiff once his tenure application is made.

72.    Whereas the handbook does not apply when the terms of the contract contradict it, the handbook would apply where the contract is silent. In this case, whereas the contract specifies what occurs when tenure is granted, it is silent as to what occurs when tenure is *not* granted.

73.    However, the handbook is not silent as to this circumstance; the handbook specifies that, if tenure is not granted, then Plaintiff is to be provided with a *seventh* year of employment.

74.    Accordingly, the contract governs reappointment and tenure, and the handbook governs what occurs when tenure is denied.

75.    As such, based on these two documents taken in combination, Plaintiff must be provided with: 1) a sixth year of employment, based on the contract, 2) the right to apply for tenure, based on the terms of the contract and the handbook, which are consistent, and 3) the right to a seventh year (2013-2014) if tenure is denied, which is a scenario not discussed in the contract but *is* discussed in the handbook.

76.    Thus, even if the terms of the handbook applied, the University still violated Plaintiff's rights under the terms of same.

77.    Shortly after Plaintiff was informed by Dean Morgan that his employment would expire at the end of his fifth year, Dean Morgan's term expired as Dean of the College of Agriculture and Natural Resources.

78. The new Dean, Mark Rieger, notified Plaintiff that he could appeal the determination of the Committee, but that the only grounds for appeal would be 1) errors of fact that may have led to a misrepresentation of [Plaintiff's] body of work, and 2) new and relevant information about [Plaintiff's] performance that was not considered previously by the committee or Dean Morgan.

79. Plaintiff was not provided with a full opportunity to appeal the Committee's decision, nor was he provided with an opportunity to appeal the fact that his employment was being terminated at the end of his fifth year instead of his sixth year. Likewise, Plaintiff was not permitted to first appeal to the Committee despite Plaintiff's right to do so under the University's applicable policies and procedures.

80. Nonetheless, Plaintiff did file an appeal to Dean Rieger.

81. In this appeal, Plaintiff notes his positive annual evaluations in 2008-2011, and also noted that he received over $54,000 in grant funding in the most recent year alone, from single source (USPEA) and total $124,000 from three separate sources over 3.5 years.

82. Plaintiff also listed his peer reviewed publications, conference and oral presentations, and teaching activities.

83. However, Plaintiff's appeal was denied on September 7, 2012.

84. This letter, written by Dean Rieger, reiterated that the sole bases for Plaintiff's appeal was whether there were 1) errors of fact that may have led to a misrepresentation of [Plaintiff's] body of work, and 2) new and relevant information about [Plaintiff's] performance that was not considered previously by the committee or Dean Morgan.

85. Importantly, Dean Rieger did not provide Plaintiff with a hearing or even a right to a full appeal of the Committee's decision. Rather, Dean Rieger limited the scope of Plaintiff's appeal to errors in the merits of the Committee's decision.

86.     Plaintiff was not permitted to raise the fact that his employment contract did not even permit the Committee to make a re-appointment decision at all, or the fact that the only re-appointment occurred at the end of Plaintiff's second year.

87.     Thus, Plaintiff was prohibited from even raising the issues that Plaintiff now raises in the instant Complaint.

88.     Because Dean Rieger found that no such errors of fact or new and relevant information was presented by Plaintiff, Dean Rieger denied Plaintiff's appeal.

89.     Additionally, while Dean Rieger found that no "new and relevant information" existed, he also stated that he did <u>not consider</u> information related to work accomplished after Plaintiff's evaluation.

90.     As such, essentially the following occurred: Rieger limited the appeal to only errors or new information; Plaintiff provided new information; Rieger intentionally did not consider this new information; and then Dean Rieger somehow nonetheless stated that no new information was provided.

91.     Lastly, Dean Rieger then reiterated that Plaintiff's employment was to end at the end of the 2012-2013 school year, stating that he hoped Plaintiff would take advantage of his "remaining months" at the University.

92.     As such, at this time, Plaintiff's employment with the University will end on August 31, 2012.

93.     For the 2012-2013 academic year, Plaintiff's salary is $92, 941.

94.     Further, in his employment with Defendant, Plaintiff receives benefits, including health insurance.

95.     Plaintiff will be deprived of this salary and these benefits, including health insurance, should his termination proceed as scheduled effective on August 31, 2013.

96.     Additionally, even though Plaintiff's contract expires on August 31st, his teaching duties will end at the end of the Spring Semester in May of 2013.

97.     Because Plaintiff has been terminated a year prior to his sixth year without having the opportunity to apply for tenure, Plaintiff is stigmatized in the academic community.

98.     Had Plaintiff been provided with the full six years of employment and an opportunity to apply for tenure, then the length of his employment with the University of Delaware would not "raise any flags" as to why his employment ended.

99.     However, because the University terminated him two years early, Plaintiff has been viewed – and will be viewed – by those in the academic community in a stigmatized manner that will prevent him from obtaining future employment commensurate with his experience and abilities.

100.    Moreover, even if Plaintiff is now provided with an opportunity to apply for tenure, this application will be prejudiced, because he has already been deprived of the ability to earn grants and other monies needed to conduct research in his sixth year, which is a major factor in the tenure application.

101.    Indeed, since learning of that his employment with the University would be ending, Plaintiff has sent a total of seventy-seven (77) employment applications to various universities and educational institutions throughout the country.

102.    As these applications and Plaintiff's *Curriculum Vitae* demonstrate, Plaintiff has a breadth of teaching, research, and writing experience that is directly relevant to the positions to which he is applying.

103.     Specifically, Plaintiff has authored twenty-eight (28) peer-reviewed publications and thirty-five (35) non-peer-reviewed publications including several in high-ranking journals, owns six (6) patents, and has provided conference and oral presentations on seventy-one (71) occasions. Plaintiff has over ten years of teaching experience, and has received a total of fifteen (15) grants in the aggregate amount of $2,933,092.

104.     Likewise, Plaintiff was selected and published in the 2011 edition of the Marquis "Who's Who in America", for his "outstanding achievement" in his field and for having "contributed significantly to the betterment of contemporary society."

105.     Further Plaintiff invented the "Enviropig", the first ever genetically modified animal to undergo regulatory approval by the United States.

106.     In fact, when Plaintiff applied for permanent residency in the United States in 2012, his application included letters of recommendation from Cecil Forsberg, Professor Emeritus at the University of Guelph, and Dr. Jong Kyu Ha, professor in the college of Agriculture and Life Sciences at the Seoul National University in Seoul, Korea, as well as from four other professors from across the world.

107.     Both Dr. Forsberg and Dr. Ha emphatically attest to Plaintiff's qualifications as a professor, his contributions to the field of animal cellular biology, and the national interest in ensuring that Plaintiff remains in the United States.

108.     Plaintiff thereafter received his United States permanent residence by receiving a "National Interest Waiver". According to the United States Citizenship and Immigration Services, "National interest waivers are usually granted to those who have exceptional ability and whose employment in the United States would greatly benefit the national interest."

109.    Despite all of this, Plaintiff has yet to even receive an interview for an employment position at the seventy-seven (77) universities and educational institutions to which he has applied.

110.    It is readily apparent that University's actions have stigmatized Plaintiff and made other universities refuse to even consider his employment applications.

111.    Based on the Defendants' actions, Plaintiff will be terminated as of August 31, 2013 and will be unable to find subsequent employment.

112.    Plaintiff will face irreparable harm via his inability to apply for tenure and the harm to his reputation that will prevent him from finding subsequent employment in the academic community.

113.    Lastly, even though Plaintiff's contract does not expire until August 31, 2013, Plaintiff's teaching duties will expire at the end of the Spring 2013 Semester in May of 2013.

114.    As a result of the Defendants' actions, Plaintiff will be irreparably and financially harmed.

115.    As a result of Defendants' action, Plaintiff has suffered from stress, emotional distress, trouble sleeping and a lack of concentration.  Plaintiff has also been recently diagnosed with acute gastritis.

**COUNT I**
**PLAINTIFF V. ALL DEFENDANTS**
**42 U.S.C. § 1983**
**14th AMENDMENT DUE PROCESS**

116.    Plaintiff incorporates the above paragraphs by reference.

117.    Plaintiff's right of continuing employment is a right protected by the laws of the United States, including 42 U.S.C. § 1983.

118.     Defendants' deprivation of Plaintiffs' constitutionally protected property right was arbitrary and capricious and motivated by bad faith.

119.     Defendants deprived Plaintiff of his constitutionally protected property right of continued employment, and denied Plaintiff due process.

120.     Defendants offered Plaintiff no pre-deprivation hearing or notice and opportunity to oppose his termination prior to his sixth and seventh years of teaching. Defendants did not provide Plaintiff with a hearing or a full appeal of the Committee's decision or the University's decision to end Plaintiff's employment after the fifth year and not permit him to apply for tenure.

121.     Defendants Gelb, Morgan, and Rieger, through their actions and conduct in their capacities as officials of the University of Delaware, deprived Plaintiff of his federally protected rights, privileges and immunities provided by federal law and the United States Constitution, and wrongfully denied him of the right to continued employment.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

**a.** Enjoin Defendants from terminating Plaintiff's employment effective August 31, 2013.

**b.** Enjoin Defendants from further proceeding with termination and/or denial of tenure or promotion.

**c.** Taking any action effectuate Plaintiff's discharge from University of Delaware.

**d.** Enter a declaratory judgment that the aforestated conduct of Defendants is and was violative of Plaintiff's Fourteenth Amendment due process rights.

e. Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate the rights of Plaintiff as secured by the United States Constitution;

f. Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

g. Award reasonable costs and attorney's fees;

h. Award punitive damages; and

i. Grant any other relief this Court deems just and proper under the circumstances.

### COUNT II
### PLAINTIFF v. ALL DEFENDANTS
### 42 U.S.C. § 1983
### BREACH OF CONTRACT AND DENIAL OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

122. Plaintiff incorporates the above paragraphs by reference.

123. Via the July 11, 2008 retention letter, an employment contract existed between Plaintiff and Defendant University of Delaware.

124. Defendant University of Delaware breached the contract by terminating Plaintiff effective at the end of his fifth year and not providing him with an opportunity to apply for tenure.

125. As a direct and proximate result of the breach by Defendants, Plaintiff has suffered and will in the future suffer pain, emotional distress, mental anguish, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation, lost wages, lost wage earning capacity, loss of benefits, and past and future medical expenses.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

**a.** Enjoin Defendants from terminating Plaintiff's employment effective August 31, 2013.

**b.** Enjoin Defendants from further proceeding with termination and/or denial of tenure or promotion.

**c.** Taking any action effectuate Plaintiff's discharge from University of Delaware.

**d.** Enter a declaratory judgment that the aforestated conduct of Defendants is and was violative of Plaintiff's rights under the retaining letter and the faculty handbook.

**e.** Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate the rights of Plaintiff under the retaining letter and the faculty handbook;

**f.** Award Plaintiffs compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

**g.** Award reasonable costs and attorney's fees;

**h.** Award punitive damages; and

**i.** Grant any other relief this Court deems just and proper under the circumstances.

**COUNT III**
**PLAINTIFF V. ALL DEFENDANTS**
**42 U.S.C. § 1983**
**FIRST AMENDMENT RETALIATION**

126.     Plaintiff adopts and incorporate the allegations in the above paragraphs as though each were individually stated herein at length.

127.     Plaintiff engaged in speech and/or conduct protected by the First Amendment of the United States.

128.     Plaintiff complained to Gelb, Morgan and Rieger regarding Professor Cogburn engaging in inappropriate sexual conduct with and making inappropriate sexual comments to students at the University of Delaware. Plaintiff further complained that Cogburn had provided higher grades for female students who had provided him with sexual favors, in doing so making said sexual favors a condition of certain students' academic advancement.  In doing so, Plaintiff spoke out on a matter of public policy and unlawful activity by the University of Delaware and its employees.

129.     Defendants violated the provisions of 42 U.S.C. § 1983 in that Defendant, acting under color of state law, deprived Plaintiff of the privileges and immunities secured to him by the First and Fourteenth Amendments of the United States Constitution.

130.     Defendants' actions were to penalize and retaliate against Plaintiff for his exercise of fundamental First Amendment rights.

131.     As a result, Plaintiff has suffered damages.

     WHEREFORE, Plaintiff respectfully requests this Honorable Court:

        a.    Enter a declaratory judgment that Defendant's retaliatory acts as complained of herein have violated and continue to violate the rights of Plaintiff as secured by the United States Constitution;

20

b.   Enjoin Defendants from continuing said retaliatory practices;

c.   Award Plaintiff compensatory damages including but not limited to: pain,

suffering, past economic loss, future economic loss, back pay, front pay, wage

increases, loss of business relationships, other economic loss, loss of life's

pleasures, loss of reputation, benefits, mental anguish, emotional distress and

other damages;

d.   Award reasonable costs and attorney's fees;

e.   Award punitive damages;

f.   Grant any other relief this Court deems just and proper under the circumstances.

**COUNT IV**
**PLAINTIFF V. ALL DEFENDANTS**
**VIOLATION OF THE DELAWARE WHISTLEBLOWER'S STATUTE**
**19 Del. §1701, Et Seq.**

132.   The above paragraphs are hereby incorporated by reference.

133.   Defendant University of Delaware is an employer for purposes of the Delaware

Whistleblower's Statute, 19 Del. §1701, Et Seq.

134.   Plaintiff at all times material was an employee of Defendant University of Delaware

under 19 Del. §1701, Et Seq.

135.   At all times material, Defendants Gelb, Morgan, and Rieger were Supervisors under 19

Del. §1701, Et Seq.

136.   Plaintiff orally complained to supervisors Gelb, Morgan and Rieger regarding Professor

Cogburn engaging in inappropriate sexual conduct with and making inappropriate sexual

comments to students at the University of Delaware. Plaintiff further complained that Cogburn

had provided higher grades for female students who had provided him with sexual favors, and in

doing so making said sexual favors a condition of certain students' academic advancement.  In

doing so, Plaintiff spoke out on a matter of public policy and unlawful activity by the University of Delaware and its employees.

137.    As a direct result of Plaintiff's complaints, Defendants retaliated against Plaintiff.

138.    Defendants' actions violate the Delaware Whistleblower's Statute, 19 Del. §1701, Et Seq.

139.    As a direct and proximate result of Defendants' actions, Plaintiff has, and will in the future, suffer pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of business relationships, other economic loss, loss of life's pleasures, loss of reputation, benefits, mental anguish, emotional distress and other damages

### JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.


**Respectfully submitted:**

*s/ Christopher H. Lee*
Christopher H. Lee (#5203)
Cooch & Taylor P A
1 000 West Street, 10th Floor
Wilmington, DE 19801
(302) 984-3800
clee@coochtaylor.com

*Of Counsel:*
Mark B. Frost (admitted *pro hac vice*)
Mark B. Frost & Associates
7 North Columbus Boulevard
Philadelphia, PA 19106
(215) 351-3333
mfrost@mfrostlaw.com
Counsel for Plaintiff


**Dated: May 12, 2014**